# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **TERRY LEE GOODWIN,**           ) | |
|                                  ) | |
|     **Plaintiff,**     ) | |
|                                  ) | |
|     v.                ) | **CIVIL ACTION NO.** |
|                                  ) | **1:13-cv-0284-AKK** |
| **CAROLYN W. COLVIN,**           ) | |
| **Acting Commissioner of Social Security,** ) | |
|                                  ) | |
|     **Defendant.**    ) | |

## MEMORANDUM OPINION

Plaintiff Terry Lee Goodwin ("Goodwin") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Goodwin, whose past relevant experience includes work as a construction worker, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on May 17, 2010, alleging a disability onset date of July 31, 2007, due to back pain and mental problems. (R. 20, 219). After the SSA denied Goodwin's

claim, he requested a hearing before an ALJ. (R. 117). The ALJ subsequently denied Goodwin's claim, (R. 17-32), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Goodwin then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the

Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Goodwin had not engaged in substantial gainful activity since July 31, 2007, and, therefore, met Step One. (R. 22). Next, the ALJ found that Goodwin satisfied Step Two because he suffered from the severe impairments of "hypertension; mild degenerative joint disease of the right knee; obesity; and lumbar degenerative disc disease." *Id*. The ALJ then proceeded to the next step and found that Goodwin failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 25). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Goodwin has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the additional limitations described below.  [Goodwin] requires a sit/stand option permitting him to change position as needed.  He is unable to use his

>right foot to operate foot controls.  He is unable to climb stairs, ladders, ropes, or scaffolds.  He can occasionally stoop but cannot kneel, crawl, or crouch.  He should avoid exposure to excessive vibrations, and he should avoid workplace hazards, such as unprotected heights and hazardous machinery.  He should avoid concentrated exposure to extreme heat and cold, humidity, chemicals, and pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  [He] is limited to unskilled work.

(R. 25-26).  In light of his RFC, the ALJ held that Goodwin "is unable to perform any past relevant work."  (R. 30).  Lastly, in Step Five, the ALJ considered Goodwin's age, education, work experience,[1] and RFC, and determined "there are jobs that exist in significant numbers in the national economy [Goodwin] can perform."  (R. 31).  Therefore, the ALJ found that Goodwin "has not been under a disability, as defined in the Social Security Act, from July 31, 2007, through the date of this decision." *Id.*

## V. Analysis

The court now turns to Goodwin's contentions that the ALJ erred by failing to (1) give proper weight to the opinion of his treating physician; (2) recontact his treating physician; and (3) include all of his limitations when assessing his RFC.  *See* doc. 9 at 4-10.  The court addresses each contention in turn.

   A.   <u>The ALJ properly considered the opinions of Goodwin's treating physician.</u>

Goodwin contends the ALJ did not give proper weight to the opinions of Dr. Carey Goodman, one of his treating physicians.  The record shows Dr. Goodman treated

---

[1] As of the date of the ALJ's decision, Goodwin was 53 years old, had a limited education, and past relevant very heavy unskilled work as a construction worker.  (R. 30).

5

Goodwin regularly for knee and back pain from November 5, 2007, through August 3, 2011. (R. 269-98, 320-31, 335-38). Dr. Goodman also completed a physical capacities evaluation (PCE) on December 13, 2010, in which because of Goodwin's "chronic pain syndrome," and his "[d]iagnos[is] with fibromyalgia," Dr. Goodman limited Goodwin to, among other things, a total of 30 minutes sitting, and 1 hour standing/walking in an eight-hour day. (R. 317). Dr. Goodman also indicated on a Clinical Assessment of Pain form that Goodwin's pain was "distracting to adequate performance of daily activities or work." (R. 318).

Goodwin contends that Dr. Goodman's opinion establishes that he is disabled and, consequently, argues the ALJ erred in giving little weight to Dr. Goodman's opinions. To determine how much weight, if any, to give Dr. Goodman's opinions, the ALJ had to consider several factors, including whether Dr. Goodman (1) had examined Goodwin; (2) had a treating relationship with Goodwin; (3) presented medical evidence and explanation supporting the opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist. *See* 20 C.F.R. § 416.927(c). Because Dr. Goodman is a treating physician, the ALJ must give "controlling weight" to his opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). Moreover, in this circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the

evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error." *Id.*

Contrary to Goodman's contention, the ALJ correctly applied the law and articulated multiple reasons for giving Dr. Goodman's opinion "little weight." (R. 29). In a nutshell, the ALJ discounted Dr. Goodman's opinions because they were inconsistent with Dr. Goodman's own treatment notes:

> Dr. Goodman's assessment merits little weight, as it is markedly inconsistent with [Goodwin's] medical treatment records, which do not provide any indication that Dr. Goodman has ever diagnosed [Goodwin] with chronic pain syndrome or fibromyalgia. It does not appear that Dr. Goodman or any other physician has ever performed a trigger point examination or other evaluation to investigate the possibility of fibromyalgia.

(R. 29). To support his finding, the ALJ pointed out that in August 2011 Dr. Goodman found "there were no signs of acute joint inflammation and no positive pertinent findings of a distinct disease process," and that on the date Dr. Goodman completed the PCE, Dr. Goodman's physical examination showed "no indication of any significant examination findings that would explain the severe restrictions in this medical source statement, and at this office visit, Dr. Goodman again advised [Goodwin] to walk for exercise." *Id.* In light of this advice for Goodwin to exercise, to no surprise, the ALJ also found that Dr. Goodman's indication that Goodwin required "an assistive device . . . to ambulate even

minimally in a normal workday," was entitled to no weight because "[t]here is no indication in [Goodwin's] medical treatment records that Dr. Goodman has ever prescribed or advised the use of a cane, and the doctor has regularly advised [Goodwin] to walk for exercise."  (R. 29-30).  Based on the court's review of the record, the court finds that the substantial evidence supports the ALJ's finding that Dr. Goodman's treatment records contradict the opinions he outlined in the PCE.

Likewise, the substantial evidence supports the ALJ's finding that Dr. Goodman's opinion that Goodwin "could rarely reach" was inconsistent with the rest of the medical evidence because "there is no record of any impairment affecting [Goodwin's] cervical spine or upper extremities that would account for such a severe restriction" *Id.*  Goodwin failed to direct the ALJ or the court to any evidence in the record that supports this opinion by Dr. Goodman.  The record also supports the ALJ's finding that Dr. Goodman based his opinion on Goodwin's subjective complaints.  As the ALJ noted, "[i]t appears that Dr. Goodman based this assessment of [Goodwin's] physical abilities and pain on [Goodwin's] own subjective report, as he noted at the bottom of the form that [Goodwin] had said his chronic problems inhibited him from most physical activities." *Id.*  The ALJ's reliance on this factor was proper because an ALJ may reject a physician's opinion when it  "appears to be based primarily on [a claimant's] subjective complaints of pain." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Based on the record before this court, it is evident that the ALJ considered the factors set forth in the regulations and, consistent with the law of this circuit, articulated

good cause for giving Dr. Goodman's opinions little weight: i.e., that Dr. Goodman's opinions were inconsistent with his own treatment notes and the other medical evidence, and were based on Goodwin's subjective complaints.  Therefore, the ALJ had good cause for rejecting Dr. Goodman's opinions, and committed no reversible error.  *See Lewis*, 125 F.3d at 1440 ("good cause" exists when physician's opinion is inconsistent with own records, a contrary finding is supported by the evidence, and the evidence does not bolster physician's opinion); 20 C.F.R. § 416.927(c)(2) (opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive controlling weight).

      B.      <u>The ALJ was not required to recontact Dr. Goodman.</u>

The court is not persuaded by Goodwin's second contention that the ALJ should have contacted Dr. Goodman for clarification.  Doc. 9 at 8.  Under the relevant regulation in effect at the time,[2] the ALJ only had a duty to contact Dr. Goodman if the medical evidence was insufficient for the ALJ to determine whether Goodwin was disabled:

> When the evidence we receive from your treating physician or psychologist or other medical source is *inadequate for us to determine whether you are disabled,* we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.

---

[2] New regulations regarding recontacting of medical sources went into effect on March 26, 2012.  77 Fed. Reg. 10651-01 (February 23, 2012).  Under the new regulations, recontacting a medical source is within the discretion of the ALJ.  *See* 20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician . . . .") (emphasis added).

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

20 C.F.R. § 404.912(e)(2010) (emphasis added). Unfortunately for Goodwin, the medical evidence included numerous treatment notes and a consultative examination that showed the extent of his impairments. Consequently, the ALJ had no obligation to recontact Dr. Goodman.

Alternatively, Goodwin's contention fails because he has not shown the requisite prejudice. Before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981). Goodwin has not established the requisite prejudice because there are no evidentiary gaps in the record that prevented the ALJ from making a conclusive determination regarding his disability. Therefore, remand for development of the record is not required.

      C.     <u>The ALJ properly assessed Goodwin's RFC.</u>

Goodwin's final contention is that the ALJ erred because she did not include all of the restrictions contained in the report of Dr. Morton Rickless, the consultative orthopedic examiner. Doc. 9 at 9-10. Goodwin's contention is based on his assumption that the ALJ's RFC finding must be based on an RFC evaluation from a physician. *See id.* at 10 ("[T]he ALJ's RFC is not consistent with any RFC evaluations provided by treating or examining physicians."). Unfortunately, Goodwin overlooks that the regulations and the

law of this circuit do not impose such a requirement. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

20 C.F.R. § 404.1527(d). One of the specifically reserved examples is a claimant's RFC: "Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Moreover, an ALJ's RFC finding can be supported by substantial evidence even without a medical source statement in the record. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment).

Here, the ALJ properly relied on the treatment records and Dr. Rickless's medical source statement to assess Goodwin's RFC. In particular, the ALJ gave great weight to Dr. Rickless's opinions:

> As for the opinion evidence, the undersigned gives great weight to Dr. Morton Rickless, who completed a medical source statement based on the findings of his December 2011 consultative orthopedic examination of [Goodwin]. Dr. Rickless determined that [Goodwin] could lift and carry

11

> up to 20 pounds frequently, and during the course of an eight-hour workday, he could perform a total of six hours of sitting, five hours of standing, and/or four hours of walking. Dr. Rickless specified that [Goodwin] did not need a cane or other assistive device to help him walk. He indicated that [Goodwin] could not operate foot controls with his right lower extremity because he had arthritis in his right knee. These conclusions merit great weight, as they are consistent with the examination findings and other medical evidence of record. The undersigned gives no weight, however, to Dr. Rickless's indication that [Goodwin] could never stoop. This restriction is inconsistent with the exam findings, which included no more than minimal limitation in the range of motion of [Goodwin]'s lumbar spine. It is also inconsistent with his conclusion that [Goodwin] could use public transportation and perform basic activities of daily living, such as cooking, shopping, and caring for personal hygiene. Such activities would be impossible without some ability to stoop, which is defined as bending the body downward and forward by bending the spine at the waist (SSR 85-15).

(R. 28-29). Although the ALJ gave great weight to Dr. Rickless's statement, she did not include all of Dr. Rickless's limitations in her RFC finding. In that regard, Goodwin contends the ALJ should have included Dr. Rickless's restriction that Goodwin could not balance, could only occasionally operate controls with his left foot, and could only walk for four hours and stand five hours in an eight-hour day. Doc. 9 at 9. Unfortunately for Goodwin, the omission of a restriction on balancing is irrelevant because none of the jobs identified by the ALJ require balancing. *See* DICOT 729.687-010, 1991 WL 679733; DICOT 706.687-010, 1991 WL 679074; DICOT 726.687-010, 1991 WL 679633. Moreover, the ALJ's inclusion of a "sit/stand option permitting [Goodwin] to change position as needed" is not inconsistent with Dr. Rickless's limitations on standing and walking because he indicated Goodwin can sit for up to six hours in an eight-hour day, leaving only two hours of combined standing and walking. (R. 345). Finally, substantial

12

evidence supports the ALJ's assessment that Goodwin had no limitation in his ability to operate controls with his left foot because Dr. Rickless only identified "arthritis [of the] right knee" to support this limitation, (R. 346), and Goodwin testified that he walked for exercise and mowed his lawn with a push lawn mower. (R. 58, 68).

Put simply, the ALJ was not required to rely on an RFC from a physician, or to accept all of Dr. Rickless's opinions about Goodwin's physical limitations. Moreover, because, there was was sufficient medical evidence to allow the ALJ to assess Goodwin's RFC and determine whether he was disabled, the record was complete. *See* 20 C.F.R. § 404.1513(e). Consequently, no additional development was required, and the ALJ committed no reversible error in assessing Goodwin's RFC.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Goodwin is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done this 18th day of August, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE